IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **NAVIGATORS INSURANCE COMPANY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| *v.* ) | Case No.: |
| ) | |
| **FAIRLIFE, LLC; MIKE MCCLOSKEY; SUE** ) | |
| **MCCLOSKEY; ARYOUT MICHAEL** ) | |
| **THOMAS BHOTIWIHOK; JEREMIAH** ) | |
| **CORNELIUS; and RANDY PAUGH,** ) | |
| ) | |
| **Defendants.** ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Navigators Insurance Company ("Navigators") states as follows for its Complaint for Declaratory Judgment:

**NATURE OF THE ACTION**

1. This is an insurance coverage dispute. Fairlife, LLC ("Fairlife") reported a putative consumer class-action lawsuit filed this year (the "2025 Litigation") to Navigators under SmartPolicy No. CH20DOL334796IV (the "Runoff Policy").

2. Through the 2025 Litigation, Aryout Michael Thomas Bhotiwihok, Jeremiah Cornelius, and Randy Paugh (together, "Claimants") allege that Fairlife markets milk products through false or misleading statements claiming high levels of animal care and environmental sustainability by the company. In that lawsuit against Fairlife and its alleged co-founders—The Coca-Cola Company, Mike McCloskey, Sue McCloskey, and Select Milk Producers, Inc.—Claimants seek to certify a class of California persons who purchased Fairlife's products since February 26, 2021.

3. Prior multidistrict class-action litigation, which commenced in 2019 and settled in 2022, (the "Prior Litigation") likewise alleged that Fairlife's marketing with respect to its commitment to animal care was false or misleading.

4. Coverage under the Runoff Policy is limited to **Claims** "first made" during a 2020-2026 **Policy Period**, and subject to a runoff exclusion precluding coverage for "any **Claim** based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any **Wrongful Act** or **Related Wrongful Act**, which has been committed or allegedly committed on or after January 2, 2020."[1]

5. Because the 2025 Litigation is predicated on Fairlife's allegedly false advertising since 2021 (or later), the runoff exclusion precludes coverage for the 2025 Litigation.

6. Moreover, even if the 2025 Litigation was somehow outside the ambit of the runoff exclusion—and it is not—the 2025 Litigation would nonetheless relate back to the substantially similar Prior Litigation and, thus, the 2025 Litigation would not constitute a **Claim** first made in the Runoff Policy's 2020-2026 **Policy Period**.

7. Other terms, conditions, and/or exclusions in Navigators' contracts with Fairlife also bar or limit coverage for the 2025 Litigation.

8. Accordingly, Navigators owes no duty to defend or indemnify Fairlife, or any other person or entity, in connection with the 2025 Litigation.

## PARTIES

9. Plaintiff Navigators is an insurance company organized under the laws of the state of New York with its principal place of business in Connecticut.

---

[1] Terms in bold are defined in the Runoff Policy.

10. Defendant Fairlife is a limited liability company with its principal place of business in Chicago, Illinois. The sole member of Fairlife is The Coca-Cola Company ("TCCC"), which is a corporation organized under the laws of Delaware with its principal place of business in Atlanta, Georgia.

11. Upon information and belief, Defendant Mike McCloskey is an individual domiciled in Puerto Rico and is therefore a citizen of Puerto Rico. Upon information and belief, Mr. McCloskey is a co-founder of Fairlife and was affiliated with Fairlife until 2020.

12. Upon information and belief, Defendant Sue McCloskey is an individual domiciled in Puerto Rico and is therefore a citizen of Puerto Rico. Upon information and belief, Ms. McCloskey is a co-founder of Fairlife and was affiliated with Fairlife until 2020.

13. Defendant Aryout Michael Thomas Bhotiwihok is an individual domiciled in California and is therefore a citizen of California. Bhotiwihok is named as a Defendant in this action only to the extent that he is required to be named as a necessary party.

14. Defendant Jeremiah Cornelius is an individual domiciled in California and is therefore a citizen of California. Cornelius is named as a Defendant in this action only to the extent that he is required to be named as a necessary party.

15. Defendant Randy Paugh is an individual domiciled in California and is therefore a citizen of California. Paugh is named as a Defendant in this action only to the extent that he is required to be named as a necessary party.

## JURISDICTION AND VENUE

16. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332, 2201, and 2202, as complete diversity exists between the parties, the amount in controversy exceeds

$75,000, and Navigators seeks declaratory relief with respect to a case of actual controversy within this Court's jurisdiction.

17. Venue is proper in this district under 28 U.S.C. § 1391(b) because Defendant Fairlife maintains its principal place of business in this District and a substantial part of the events or omissions giving rise to this action occurred in this District.

## THE RUNOFF POLICY

18. Navigators issued SmartPolicy No. CH20DOL334796IV (the "Runoff Policy") to Fairlife for the original **Policy Period** of January 1, 2020 to January 20, 2021. This policy was a renewal of SmartPolicy No. CH19DOL334796IV (the "2019-20 Policy"), which Navigators issued to Fairlife for the **Policy Period** of January 1, 2019 to January 20, 2020. (True and correct copies of the Runoff Policy and 2019-20 Policy [together, the "Policies"] are attached as Exhibits A and B, respectively.).

19. On or around January 3, 2020, TCCC acquired Fairlife.

20. Accordingly, through Endorsement No. 13 to the Runoff Policy (the "Runoff Endorsement"), the **Policy Period** commencing January 1, 2020 now ends on January 2, 2026.

21. The Runoff Endorsement includes an exclusion which is applicable to all Coverage Parts (the "Runoff Exclusion"):

> The Insurer shall not be liable for **Loss** in connection with any **Claim** based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any **Wrongful Act** or **Related Wrongful Act**, which has been committed or allegedly committed on or after January 2, 2020.

22. The Runoff Policy's Directors & Officers ("D&O") Coverage Part contains a maximum aggregate limit of liability of $2,000,000, which is subject to a $50,000 each **Claim** Retention under Insuring Agreements B and C.

4

23. The 2025 Litigation does not implicate any other Coverage Part of the Runoff Policy.

24. Section I. of the Runoff Policy's D&O Coverage Part—the "Insuring Agreements"—limits the D&O Coverage Part's scope of coverage in relevant part as follows:

A. The Insurer will pay to or on behalf of the **Insured Persons** all **Loss** which the **Insured Persons** are legally obligated to pay as a result of a **Claim** first made against the **Insured Persons** during the **Policy Period** or the Discovery Period, if purchased, for a **Wrongful Act** by the **Insured Persons**, except for **Loss** which the **Company** actually pays as advancement or indemnification.

B. The Insurer will pay to or on behalf of the **Company** all **Loss** which the **Insured Persons** are legally obligated to pay as a result of a **Claim** first made against the **Insured Persons** during the **Policy Period** or the Discovery Period, if purchased, for a **Wrongful Act** by the **Insured Persons**, but only to the extent the **Company** is required or permitted by law to pay such **Loss** to or on behalf of the **Insured Persons** as advancement or indemnification.

C. . . . [T]he Insurer will pay to or on behalf of the **Company** all **Loss** which the **Company** is legally obligated to pay as a result of a **Claim** first made against it during the **Policy Period** or the Discovery Period, if purchased, for a **Wrongful Act** by the **Company**.

25. Section II.B. of the Runoff Policy's General Terms and Conditions defines **Company** to mean the **Corporation** and any **Subsidiary**.

26. Pursuant to Section II.C. of the Runoff Policy's General Terms and Conditions, the **Corporation** means the entity named in ITEM 1 of the Declarations, which is Fairlife.

27. TCCC is not a **Company** under the Runoff Policy.

28. Select Milk Producers, Inc. ("Select Milk") is not a **Company** under the Runoff Policy.

5

29. Section II.E. of the Runoff Policy's D&O Coverage Part defines **Insured Person** to include "any past, present or future duly elected or appointed director, officer or member of the board of managers or management committee of the **Company**" and "any **Employee**."

30. Section II.J. of the Runoff Policy's D&O Coverage Part defines **Wrongful Act** as:

    1. any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty by any **Insured Person** in his or her capacity as such with the **Company**;

    2. any matter claimed against any **Insured Person** solely by reason of his or her status with the **Company**;

    3. any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty by any **Insured Person** in his or her **Outside Capacity**; or

    4. with respect only to coverage under INSURING AGREEMENT C, if purchased, any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty by the **Company**.

31. Pursuant to Section VIII.B. of the Runoff Policy's General Terms and Conditions, "[a]ll **Claims** involving the same **Wrongful Act** or **Related Wrongful Acts** of one or more **Insureds** will be considered a single **Claim**, and will be deemed to have been made on the earlier of the following dates: (1) the earliest date on which any such **Claim** was first made; or (2) the earliest date on which any such **Wrongful Act** or **Related Wrongful Act** was reported under this Policy or any other policy providing similar coverage."

32. Section II.M. of the Runoff Policy's General Terms and Conditions defines **Related Wrongful Acts** as "**Wrongful Acts** which are logically or causally connected by reason of any common fact, circumstance, situation, transaction, event or decision."

33. Section III.A.2. of the Runoff Policy's D&O Coverage Part (the "Prior Notice Exclusion") provides that Navigators will not be liable under this Coverage Part to make any payment of **Loss**, including **Costs of Defense**, in connection with any **Claim** made against any

6

**Insured** "based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any **Wrongful Act** or **Related Wrongful Act** or any fact, circumstance or situation which has been the subject of any notice given under any other policy of which this Coverage Part is a renewal or replacement[.]"

34. Section III.A.6. of the Runoff Policy's D&O Coverage Part (the "Capacity Exclusion") provides that Navigators will not be liable under this Coverage Part to make any payment of **Loss**, including **Costs of Defense**, in connection with any **Claim** made against any **Insured** "for any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty by any **Insured Person** in his or her capacity as an **Employee**, director, officer, trustee, regent, governor or equivalent executive of any entity other than the **Company** or an **Outside Entity**, even if directed or requested by the **Company** to serve in such capacity[.]"

35. Section III.B.1 of the Runoff Policy's D&O Coverage Part (the "Contract Exclusion") provides that Navigators will not be liable under Insuring Agreement C to make any payment of **Loss**, including **Costs of Defense**, in connection with any **Claim** made against the **Company** "based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any liability under any contract or agreement; provided, however, that this exclusion will not apply to the extent the **Company** would have been liable in the absence of such contract or agreement[.]"

## THE UNDERLYING LITIGATION

### *Prior Litigation*

36. On or around June 11, 2019, Alain Michael filed a lawsuit styled *Michael v. Fairlife, LLC*, Case No. 19-cv-3924, in the U.S. District Court for the Northern District of Illinois, which was consolidated in multidistrict litigation against Fairlife, TCCC, Mike and Sue McCloskey (the

7

"McCloskeys"), and Select Milk captioned *In Re: Fairlife Milk Products Marketing and Sales Practices Litigation*, Case No. 19-cv-3924 (together, the "Prior Litigation"). (True and correct copies of Mr. Michael's original June 11, 2019 Complaint and the June 25, 2020 Consolidated Class Action Complaint are attached as Exhibits C and D, respectively.)

37. On or around June 14, 2019, Fairlife reported the Prior Litigation to Navigators for coverage under the 2019-20 Policy.

38. The Prior Litigation alleged that Fairlife's representations about humane animal care—as well as the quality of milk produced and used, the traceability of milk used, and the environmental sustainability of farming practices associated with Fairlife products—proved false, deceptive, and misleading given that several undercover investigations revealed widespread animal abuse at farms that sourced Fairlife products.

39. Based on these allegations, the Prior Litigation asserted counts for breach of express warranty, unjust enrichment, violations of California's False Advertising Law, Unfair Competition Law, Consumers Legal Remedies Act, and violations of other state consumer-protection statutes.

40. In 2022, Judge Robert M. Dow, Jr. approved a settlement of the Prior Litigation and certified a nationwide settlement class of persons who purchased specified Fairlife products until April 27, 2022.

*2025 Litigation*

41. Later, on February 26, 2025, Claimants filed the 2025 Litigation against Fairlife, TCCC, the "McCloskeys," and Select Milk, and, on May 29, 2025 filed a First Amended Complaint in that case. (True and correct copies of the 2025 Litigation's original Complaint and First Amended Complaint are attached as Exhibits E and F, respectively.)

8

42. In the 2025 Litigation, the Claimants allege that the Fairlife brand touts high levels of care for animals in the Fairlife supply chain—including freedom from abusive and neglectful acts and practice—to consumers.

43. The Claimants further allege that Fairlife also touts its commitment to environmental sustainability, including through: claims that Fairlife farms are industry leaders for environmental sustainability; "manure sustainability" claims; and claims that Fairlife's plastic packaging is recyclable.

44. The Claimants allege that Fairlife's claims regarding animal care are false, misleading, and untrue given that video evidence from multiple undercover investigations conducted in 2023, 2024, and 2025 revealed "widespread, egregious, systemic, frequent, and extreme cruelty and neglect" to animals in the Fairlife supply chain.

45. The Claimants also allege that Fairlife's claims regarding sustainability are false, misleading and untrue in light of: a 2024 investigation that revealed "dumping of carcasses near waterways," and resulting pollution; Fairlife "biogas digesters" that hurt the environment, and the fact that Fairlife's packaging is not recyclable.

46. Based on these allegations, the Claimants assert counts against Fairlife and TCCC for breach of express warranty, violations of California's False Advertising Law, Unfair Competition Law, Consumers Legal Remedies Act, and unjust enrichment, as well as a count for aiding and abetting against the McCloskeys and Select Milk.

## **INSURANCE COVERAGE DISPUTE**

47. Fairlife seeks insurance coverage from Navigators under the Runoff Policy in connection with the 2025 Litigation.

48. Upon information and belief, Mike and Sue McCloskey may also seek insurance coverage from Navigators under the Runoff Policy in connection with the 2025 Litigation.

49. Navigators disputes that coverage exists for the 2025 Litigation under the Runoff Policy, or any other Navigators policy.

50. An actual, present, and bona fide controversy exists between Navigators, on the one hand, and one or more Defendants, on the other hand, with respect to whether there is insurance coverage for the 2025 Litigation under one or more Navigators insurance policies.

51. A judicial declaration is necessary to establish the parties' rights and duties, if any, under one or more Navigators insurance policies.

## COUNT I – DECLARATORY JUDGMENT
### (Runoff Exclusion)

52. Navigators incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 51 as though set forth fully herein.

53. The Runoff Exclusion precludes coverage for "any **Claim** based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any **Wrongful Act** or **Related Wrongful Act**, which has been committed or allegedly committed on or after January 2, 2020."

54. The 2025 Litigation is predicated on Fairlife's alleged false advertising since February 26, 2021.

55. Therefore, the 2025 Litigation is a **Claim** based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving alleged **Wrongful Acts** committed or allegedly committed on or after January 2, 2020.

56. Accordingly, pursuant to the Runoff Exclusion, the Runoff Policy affords no coverage for the 2025 Litigation.

## COUNT II – DECLARATORY JUDGMENT
### (Claim First-Made Date)

57. Navigators incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 56 as though set forth fully herein.

58. Coverage under the Runoff Policy's D&O Coverage Part is limited to **Claims** first made during the **Policy Period**.

59. Under the Runoff Policy, "[a]ll **Claims** involving the same **Wrongful Act** or **Related Wrongful Acts** of one or more **Insureds** will be considered a single **Claim**, and will be deemed to have been made on the earlier of the following dates: (1) the earliest date on which any such **Claim** was first made; or (2) the earliest date on which any such **Wrongful Act** or **Related Wrongful Act** was reported under this Policy or any other policy providing similar coverage."

60. The Runoff Policy defines **Related Wrongful Acts** as "**Wrongful Acts** which are logically or causally connected by reason of any common fact, circumstance, situation, transaction, event or decision."

61. The Prior Litigation and 2025 Litigation both allege that Fairlife's advertising falsely or misleadingly touted high levels of animal care while animal abuse occurred in Fairlife's supply chain.

62. As such, the Prior Litigation and 2025 Litigation allege **Wrongful Acts** which are logically or causally connected by reason of any common fact, circumstance, situation, transaction, event or decision, *i.e.*, **Related Wrongful Acts**.

63. Because the Prior Litigation and 2025 Litigation (together, the "Underlying Litigation") involve **Related Wrongful Acts**, they should be considered a single **Claim** deemed made on the earliest date when the Prior Litigation was first made or reported, *i.e.*, June 2019.

64. The Runoff Policy's **Policy Period** is from January 1, 2020 to January 1, 2026.

65. Accordingly, given that the Underlying Litigation was a **Claim** first made in 2019, and not during the **Policy Period**, the Runoff Policy's D&O Coverage Part affords no coverage for the 2025 Litigation.

## COUNT III – DECLARATORY JUDGMENT
### (Prior Notice Exclusion)

66. Navigators incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 65 as though set forth fully herein.

67. The Runoff Policy's Prior Notice Exclusion precludes coverage for any **Claim** made against any **Insured** "based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any **Wrongful Act** or **Related Wrongful Act** or any fact, circumstance or situation which has been the subject of any notice given under any other policy of which this Coverage Part is a renewal or replacement[.]"

68. The Runoff Policy defines **Related Wrongful Acts** as "**Wrongful Acts** which are logically or causally connected by reason of any common fact, circumstance, situation, transaction, event or decision."

69. The Prior Litigation and 2025 Litigation both allege that Fairlife's advertising falsely or misleadingly touted high levels of animal care while animal abuse occurred in Fairlife's supply chain.

70. As such, the Prior Litigation and 2025 Litigation allege **Wrongful Acts** which are logically or causally connected by reason of any common fact, circumstance, situation, transaction, event or decision, *i.e.*, **Related Wrongful Acts**.

71. On or around June 14, 2019, the Prior Litigation was reported to Navigators under the 2019-20 Policy.

72. The Runoff Policy is a renewal or replacement of the 2019-20 Policy.

73. As such, the 2025 Litigation is "based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving" **Related Wrongful Acts** "or any fact, circumstance or situation which has been the subject of any notice given under any other policy of which [the Runoff Policy] is a renewal or replacement."

74. Accordingly, pursuant to the Prior Notice Exclusion, the Runoff Policy's D&O Coverage Part affords no coverage for the 2025 Litigation

## COUNT IV – DECLARATORY JUDGMENT
### (Contract Exclusion)

75. Navigators incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 74 as though set forth fully herein.

76. The Runoff Policy's Contract Exclusion precludes coverage under Insuring Agreement C of the D&O Coverage Part for any **Claim** made against the **Company** "based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any liability under any contract or agreement; provided, however, that this exclusion will not apply to the extent the **Company** would have been liable in the absence of such contract or agreement."

77. The 2025 Litigation is a **Claim** made against the **Company**, which includes Fairlife.

78. The 2025 Litigation alleges that Fairlife breached express warranties in its contracts with consumers and seeks to certify a class of consumers that contracted with Fairlife.

79. Accordingly, the 2025 Litigation is "based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving" Fairlife's liability under its contracts with its consumers.

80. Fairlife would not be liable in the absence of its contracts with its consumers.

81. Accordingly, pursuant to the Contract Exclusion, Insuring Agreement C of the Runoff Policy's D&O Coverage Part affords Fairlife no coverage for the 2025 Litigation.

### COUNT V – DECLARATORY JUDGMENT
(Insured Capacity)

82. Navigators incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 81 as though set forth fully herein.

83. The Runoff Policy's D&O Coverage Part limits coverage to **Claims** for **Wrongful Acts**.

84. The Runoff Policy's D&O Coverage Part defines a **Wrongful Act** in relevant part as: (1) any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty by any **Insured Person** in his or her capacity as such with the **Company**; (2) any matter claimed against any **Insured Person** solely by reason of his or her status with the **Company**; or (3) any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty by any **Insured Person** in his or her **Outside Capacity**.

85. The Runoff Policy defines an **Insured Person** in relevant part as "any past, present or future duly elected or appointed director, officer or member of the board of managers or management committee of the **Company**" or "any **Employee**."

86. Upon information and belief, neither of the McCloskeys have been a "director, officer or member of the board of managers or management committee" or **Employee** of the **Company** since 2020.

87. The 2025 Litigation is predicated on alleged conduct and acts taken in 2021 or later.

88. The 2025 Litigation does not involve any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty by any **Insured Person** "in his or her **Outside Capacity**," as defined by the Runoff Policy.

89. The Runoff Policy affords the McCloskeys no coverage to the extent that 2025 Litigation is not a **Claim** "for a **Wrongful Act**" by them.

## COUNT VI – DECLARATORY JUDGMENT
### (Capacity Exclusion)

90. Navigators incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 89 as though set forth fully herein.

91. The D&O Coverage Part's Capacity Exclusion precludes coverage for any **Claim** made against any **Insured** "for any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty by any **Insured Person** in his or her capacity as an **Employee**, director, officer, trustee, regent, governor or equivalent executive of any entity other than the **Company** or an **Outside Entity**, even if directed or requested by the **Company** to serve in such capacity[.]"

92. The 2025 Litigation alleges that Mike McCloskey is a current or former CEO of Select Milk, that he was also a Board member of Lake States Dairy Center, Inc., and that the McCloskeys have both been employed by an animal welfare certifier named FARM.

93. Select Milk, Lake States Dairy Center, Inc., and FARM are not **Companies** or **Outside Entities** as defined by the Runoff Policy.

94. Coverage for the 2025 Litigation is barred or limited to the extent that the D&O Coverage Part's Capacity Exclusion applies.

## COUNT VII – DECLARATORY JUDGMENT
### (No Coverage Under Any Navigators Policy)

95. Navigators incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 94 as though set forth fully herein.

15

96. Pursuant to its contracts with Fairlife, Navigators owes no coverage for the Underlying Litigation under any insurance policy issued by Navigators.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Navigators Insurance Company, prays that this Court enter a judgment in its favor and against Defendants, awarding the following relief:

a. A declaration that Navigators has no duty to defend or indemnify Fairlife, Mike McCloskey, Sue McCloskey, or any other person or entity in connection with the 2025 Litigation under the Runoff Policy or any other insurance policy;

b. For costs of suit incurred herein; and

c. For such other and further relief at law or in equity that the Court deems just and proper.

**RESERVATION OF RIGHTS**

The Policies contain terms, conditions, and exclusions that may be relevant to the 2025 Litigation but that are not currently implicated by this declaratory judgment action. Nothing in this Complaint should be construed as a waiver by Navigators of any coverage defenses at law, in equity, or under the Policies. Navigators continues to reserve all rights with respect to any claim for coverage made under the Policies where appropriate, and waives none.

DATED: October 3, 2025        NAVIGATORS INSURANCE COMPANY

By: *Milad Emam*
Milad Emam
Ranjini S. Rajan
BATESCAREY LLP
191 North Wacker, Suite 2400
Chicago, Illinois 60606
Ph.:   312-762-3100
Fax:   312-762-3200
Email: memam@batescarey.com
Email: rrajan@batescarey.com